1  KAREN P. HEWITT
   United States Attorney
2  ALESSANDRA P. SERANO
   Assistant United States Attorney
3  California State Bar No. 204796
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7084/(619) 557-7381 (Fax)
   Email: alessandra.p.serano@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,      )  Criminal Case No. 08CR1453-LAB
                                   )
11              Plaintiff,         )  Date:      June 30, 2008
                                   )  Time:      2:00 p.m.
12              v.                 )
                                   )  GOVERNMENT'S RESPONSE AND
13  DAVID RIVERA,                  )  OPPOSITION TO DEFENDANT'S
                                   )  MOTIONS TO:
14              Defendant.         )
                                   )  (1)  COMPEL DISCOVERY;
15                                 )  (2)  DISMISS INDICTMENT;
                                   )  (3)  SUPPRESS EVIDENCE'
16                                 )  (4)  SUPPRESS STATEMENTS
                                   )  (4)  FILE FURTHER MOTIONS.
17                                 )
                                   )
18                                 )  TOGETHER WITH STATEMENT OF
                                   )  FACTS, MEMORANDUM OF POINTS
19                                 )  AND AUTHORITIES.
   _____ )
20

21        COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel

22  KAREN P. HEWITT, United States Attorney, and ALESSANDRA P. SERANO, Assistant U.S.

23  Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendant

24  DAVID RIVERA ("Defendant") which is based upon the files and records of this case.

25  //

26  //

27  //

28

1

**I**

2

**STATEMENT OF THE CASE**

3       On May 7, 2008, a federal grand jury for the Southern District of California returned a

4   single-count Indictment charging Defendant with being a deported alien found in the United States,

5   in violation of 8 U.S.C. §1326(a) and (b).

6

**II**

7

**STATEMENT OF FACTS**

8       **A.       THE OFFENSE**

9       On April 28, 2008, at approximately 8:25 a.m., Supervisory Border Patrol Agent Matta was

10  conducting line watch duties in the area of Potrero, California, which is approximately five miles

11  east of the Tecate Port of Entry and 1 mile north of the international border.  Agent Matta observed

12  a person, later identified as the Defendant walking westbound on the north side of State Route 94.

13  Defendant appeared lost, tired and dirty and his clothes had brush marks on them.  As Agent Matta

14  approached Defendant, Defendant greeted him in the English language.  Agent Matta identified

15  himself as a United States Border Patrol agent and asked Defendant about his citizenship.

16  Defendant responded that he was a Mexican citizen with no documents allowing him to enter or

17  remain in the United States.  At approximately 8:30 a.m., Agent Matta placed Defendant under

18  arrest and transported him to the Tecate Processing Center for further processing.

19      **B.       DEFENDANT'S STATEMENT**

20      At the Tecate Processing Center, Defendant was advised of his <u>Miranda</u> rights in Spanish

21  by Agent Diego and witnessed by Agent Kennedy at approximately 2:35 p.m.  The entire interview

22  was recorded on a DVD.  Defendant acknowledged those rights and agreed to speak to agents.  He

23  was also advised of his right to speak to the Mexican consulate, but declined to speak with the

24  Consulate.  In summary, Defendant stated that he knowingly crossed into the United States

25  illegally.  He also stated that he did not possess any documents that allowed him to enter or remain

26  the United States.

27

28

1  **C.       Defendant's Immigration and Criminal History**

2       Defendant was previously ordered deported via administrative order on May 7, 2002 and

3  physically removed to Mexico on September 3, 2003 via Laredo, Texas.  Defendant was previously

4  convicted of First Degree Sexual Assault on a Child on November 15, 2000 in Douglas County,

5  Nebraska and sentenced to 4 to 6 years in custody.

6                                           **III**

7       **UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

8  **A.       THE MOTION TO COMPEL DISCOVERY SHOULD BE DENIED**

9       The Government intends to fully comply with its discovery obligations under <u>Brady v.</u>

10 <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules

11 of Criminal Procedure.  The Government anticipates that most discovery issues can be resolved

12 amicably and informally, and has addressed Defendant's specific requests below.

13      **(1)       The Defendant's Statements**

14      The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

15 provide to Defendant the substance of Defendant's oral statements and Defendant's written

16 statements.  The Government has produced all of Defendant's written statements that are known

17 to the undersigned Assistant U.S. Attorney at this date and has also produced all available

18 videotapes/DVDs as well as the substance of all oral statements.  If the Government discovers

19 additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule

20 16(a)(1)(B), such statements will be provided to Defendant.

21      The Government has no objection to the preservation of the handwritten notes that may

22 have been taken by any of the Government's agents and officers.  <u>See</u> <u>United States v. Harris</u>, 543

23 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an

24 accused or prospective government witnesses).  However, the Government objects to providing

25 Defendant with a copy of any rough notes, if they exists, at this time.  Rule 16(a)(1)(A) does not

26 require disclosure of the rough notes where the content of those notes have been accurately

27 reflected in a type-written report.  <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th Cir. 2002);

28 <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require

disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

### (2)    Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

### (3)    Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's

1    decision; it need only disclose information favorable to the defense that meets the appropriate

2    standard of materiality." Id. at 774-775 (citation omitted).

3        The United States will turn over evidence within its possession which could be used to

4    properly impeach a witness who has been called to testify.

5        Although the United States will provide conviction records, if any, which could be used to

6    impeach a witness, the United States is under no obligation to turn over the criminal records of all

7    witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

8    information, disclosure need only extend to witnesses the United States intends to call in its case-

9    in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607

10    F.2d 1305, 1309 (9th Cir. 1979).

11        Finally, the United States will continue to comply with its obligations pursuant to

12    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

13        **(4)    Sentencing Information**

14        Defendant claims that the United States must disclose any information affecting

15    Defendant's sentencing guidelines because such information is discoverable under Brady v.

16    Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such

17    disclosure obligation under Brady.

18        The United States is not obligated under Brady to furnish a defendant with information

19    which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady

20    is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already

21    known to the defendant. In such case, the United States has not suppressed the evidence and

22    consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2nd Cir.

23    1987).

24        But even assuming Defendant does not already possess the information about factors which

25    might affect his guideline range, the United States would not be required to provide information

26    bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of

27    guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

28    Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time

when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

**(5)**      **Defendant's Prior Record.**

The United States has already provided Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B) along with copies of the judgement and conviction document.

**(6)**      **Proposed 404(b) Evidence and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such other acts at the time the United States' trial memorandum is filed.

**(7)**      **Evidence Seized/Preservation of Evidence**

The United States has complied and will continue to comply with Rule 16(a)(1)(c) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8)**      **Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

1    The United States has made the evidence available to Defendant and Defendant's investigators and

2    will comply with any request for inspection.

3        Again, the United States will continue to comply with its obligations pursuant to

4    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

5        **(9)    Tangible Objects**

6        The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

7    allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

8    tangible objects seized that is within its possession, custody, or control, and that is either material

9    to the preparation of Defendant's defense, or is intended for use by the Government as evidence

10    during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

11    need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d

12    574, 584 (9th Cir. 1984).

13        **(10)    Expert Witnesses**

14        Should this case be set for trial, the Government will provide expert notice in accordance

15    with Rule 16 in advance of trial.

16        **(11)    Evidence of Bias or Motive to Lie**

17        The United States is unaware of any evidence indicating that a prospective witness is biased

18    or prejudiced against Defendant.   The United States is also unaware of any evidence that

19    prospective witnesses have a motive to falsify or distort testimony.

20        **(12)    Impeachment Evidence**

21        As stated previously, the United States will turn over evidence within its possession which

22    could be used to properly impeach a witness who has been called to testify.

23        **(13)    Criminal Investigation of Government Witness**

24        Defendants are not entitled to any evidence that a prospective witness is under criminal

25    investigation by federal, state, or local authorities.   "[T]he criminal records of such [Government]

26    witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

27    United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

28    of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

1  States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

2  the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a

3  defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542

4  F.2d at 1026).

5        The Government will, however, provide the conviction record, if any, which could be used

6  to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

7  information, disclosure need only extend to witnesses the United States intends to call in its case-

8  in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607

9  F.2d 1305, 1309 (9th Cir. 1979).

10        **(14)**    **Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

11        The United States is unaware of any evidence indicating that a prospective witness has a

12  problem with perception, recollection, communication, or truth-telling.

13        **(15)**    **Jencks Act Material**

14        The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

15  on direct examination, the Government must give the Defendant any "statement" (as defined by

16  the Jencks Act) in the Government's possession that was made by the witness relating to the

17  subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks

18  Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

19  by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral

20  statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are

21  read back to a witness to see whether or not the government agent correctly understood what the

22  witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act.

23  United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States,

24  425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act material

25  after the witness testifies, the Government plans to provide most (if not all) Jencks Act material

26  well in advance of trial to avoid any needless delays.

27

28

1    **(16)    Giglio Information**

2        As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u>

3    <u>v. Maryland</u>, 373 U.S.  83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

4    1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

5        **(17)    Agreements Between the Government and Witnesses**

6        The Government has not made or attempted to make any agreements with prospective

7    Government witnesses for any type of compensation for their cooperation or testimony.

8        **(18)    Informants and Cooperating Witnesses**

9        The Government must generally disclose the identity of informants where (1) the informant

10   is a material witness, or (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United</u>

11   <u>States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential informant involved in this case, the Court

12   may, in some circumstances, be required to conduct an in-chambers inspection to determine

13   whether disclosure of the informant's identity is required under <u>Roviaro</u>.   See <u>United States v.</u>

14   <u>Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the Government determines that there

15   is a confidential informant who is a material witness in this case, the Government will either

16   disclose the identity of the informant or submit the informant's identity to the Court for an in-

17   chambers inspection.

18       **(19)    Bias by Informants or Cooperating Witnesses**

19       As stated above, the United States is unaware of any evidence indicating that a prospective

20   witness is biased or prejudiced against Defendant.  The United States is also unaware of any

21   evidence that prospective witnesses have a motive to falsify or distort testimony.

22       **(20)    A-file Inspection**

23       The Government has turned over all relevant documents from Defendant's A file

24   including documents related to the order of deportation and removal.  The Government objects

25   to the defense request to view the A file in its entirely.  Should counsel believe that

26   discoverable documents are contained in the A file which were not produced already, the

27   Government requests that counsel advise it of such documents so that it may copy such

28   documents and produce them.  Otherwise, such a request to view the entire A file would just

1  permit defense counsel to engage in an overbroad "fishing expedition" to view otherwise non-

2  discoverable documents.

3      **(21)    Residual Request**

4      The Government has already complied with Defendant's request for prompt compliance

5  with its discovery obligations.  The Government will comply with all of its discovery obligations,

6  but objects to the broad and unspecified nature of Defendant's residual discovery request.

7  **B.    THE  GRAND  JURY  INSTRUCTIONS  WERE  NOT  FAULTY,  AND  THE**

8  **INDICTMENT SHOULD NOT BE DISMISSED**

9      It bears noting that the Hon. Barry Ted Moskowitz and the Hon. John A. Houston, both

10  recently issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here.

11  See Order of Judge Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as

12  Appendix 4.  The United States adopts the reasoning in this Court's previous order and requests

13  that the Court reach the same result.  Attached as Appendix 1 is the "Partial Transcript" of the

14  Grand Jury Proceedings.  Attached as Appendix 2 is a redacted "Supplemental Transcript" which

15  records the relevant portions of the voir dire proceedings.

16      Other courts of this district have repeatedly rejected the arguments raised by Defendant

17  before, and we ask the Court to do so again.

18  **C.    The Motion to Suppress Evidence Derived from the Stop Should be Denied**

19      Defendant contends that the stop performed by Border Patrol Agent Matta on April 28,

20  2008 violated the Fourth Amendment, and any statement obtained must be suppressed. [Def. Mot.

21  at 25.] As set forth below, his motion is meritless and should be denied.

22      The Fourth Amendment allows officers to perform "brief investigatory stops of persons or

23  vehicles" when "the officer's action is supported by reasonable suspicion to believe that criminal

24  activity may be afoot."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted);

25  Terry v. Ohio, 392 U.S. 1 (1968).  "A temporary detention or seizure of a person is 'justifiable

26  under the Fourth Amendment if there is articulable suspicion that a person has committed or is

27  about to commit a crime.'" United States v. Woods, 720 F.2d 1022, 1026 (9th Cir. 1983) quoting

28  Florida v. Royer, 460 U.S. 491, 498 (1983).  In forming reasonable suspicion, the officer is entitled

to draw upon personal experience and specialized training and to make inferences from and deductions about the cumulative information available to him that "might well elude an untrained person." Arvizu, 534 U.S. at 273 (citation omitted). "The process does not deal with hard certainties, but with probabilities" and "commonsense conclusions about human behavior." United States v. Cortez, 449 U.S. 411, 418 (1981). Reasonable suspicion is simply "a particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). It is more than a "hunch" and less than "probable cause." Arvizu, 534 U.S. at 274.

The inquiry is whether "a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot." United States v. $109,179 in U.S. Currency, 228 F.3d 1080, 1084 (9th Cir. 2000) quoting Terry v. Ohio, 392 U.S. 1, 30 (1968). If police have reasonable suspicion, a Terry stop may also be used to investigate a completed felony, not just an ongoing one or in anticipation of a crime. United States v. Grigg, 498 F.3d 1070, 1074-5 (9th Cir. 2007).

_____Agent Matta had reasonable suspicion to believe that Defendant had unlawfully entered the United States. On April 28, 2008, Agent Matta, while wearing his government uniform, was performing linewatch duties along Highway 94 near Potrero, California which is approximately five miles east of the Tecate, California Port of Entry, and one miles north of the U.S.-Mexico international border. This is an area where smugglers and illegal aliens are often found. Agent Matta observed Defendant walking o the highway appearing to be tired and lost. As Agent Matta approached, he observed Defendant's dirty clothes covered with brush marks. Agent Matta identified himself as a Border Patrol Agent and immediately performed a field interview concerning Defendant's immigration status. Defendant responded that he was a citizen and national of Mexico without documents to enter or remain legally in the United States. Agent Matta placed Defendant under arrest. The totality of these circumstances provided Agent Matta with a "a particularized and objective basis" for suspecting that Defendant was involved in criminal activity. Ornelas, 517 U.S. at 696.

1     "Given that [Agent Matta] had reasonable suspicion to make a Terry stop, he could ask

2     [Defendant] questions reasonably related in scope to the justification for their initiation." United

3     States v. Cervantes-Flores, 421 F.3d 825, 830 (9th Cir. 2005) (citation omitted) (upholding

4     admission of pre-Miranda statements made during Terry stop); United States v. Butler, 249 F.3d

5     1094, 1098 (9th Cir. 2001) ("The case books are full of scenarios in which a person is detained by

6     law enforcement officers, is not free to go, but is not 'in custody' for Miranda purposes.").

7     The Ninth Circuit's decision in Cervantes-Flores is closely on point. There, a Border Patrol

8     agent encountered defendant Cervantes traveling alone in a rural area known for alien smuggling.

9     Cervantes-Flores, 421 F.3d at 829. Cervantes fled, and the agent apprehended him after a foot

10    chase. Id. The agent handcuffed Cervantes and asked him "about his place of birth, his citizenship,

11    whether he had permission to be in the United States and how he had crossed into the United

12    States." Id. at 830. The Court of Appeals upheld the admission of these statements because the

13    agent had reasonable suspicion to make a Terry stop, and the questions "were reasonably limited

14    in scope to determining whether Cervantes had crossed the border illegally." Id. Even the

15    handcuffing did not convert the Terry stop to a custodial arrest given Cervantes' flight and the

16    agent's safety concerns. Id.

17    Here, the limited questions posed by Agent Matta concerning Defendant's immigration

18    status were reasonably related to Agent Matta's suspicion that Defendant had unlawfully entered

19    the United States. Indeed, the questions are indistinguishable from those held permissible in

20    Cervantes-Flores. As such, no Miranda warnings were required, and there is no basis for

21    suppression.

22    For all of the foregoing reasons, Defendant's field admissions are admissible and the Court

23    should deny Defendant's motion to suppress for an alleged violation of the Fourth Amendment.

24

25

26

27

28

**D.     The Motion to Suppress Field Statements Should be Denied**

Defendant next moves to suppress the field statements as violative of Miranda.  Moreover, according to the Defendant, even if the field statements were obtained legally, he moves to suppress all post-<u>Miranda</u> statements because, he argues, they were involuntary.[1]

When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer <u>Miranda</u> warnings prior to questioning the person.  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  Such a requirement thus has two components: (1) custody, and (2) interrogation.  <u>Id.</u> at 477-78.  Whether a person is in custody is measured by an objective standard.  <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984).  A court must examine the totality of circumstances and determine "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave."  <u>United States v. Booth</u>, 669 F.3d 1231, 1235 (9th Cir. 1981); <u>see</u> <u>also</u> <u>United States v. Beraun-Perez</u>, 812 F.2d 578, 580 (9th Cir. 1980).  Factors relevant to this determination are "1) the language used to summon the individual; 2) the extent to which the defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to detain the individual."  <u>Id.</u> (citation omitted).

The Supreme Court held that in the "general interest of effective crime prevention and detection...a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest."  <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968).  This authorized investigatory detention or stop falls short of custody when a Border Patrol agent does not have enough information to execute an arrest, and must investigate further through brief, routine questioning about citizenship and immigration status.  <u>See</u> <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878-88 (1975); <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 731-32 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001).

---

[1]     Because the motion to suppress only deals with the validity of the field statements, if an evidentiary hearing is held, the Government intends to show the DVD of the post-<u>Miranda</u> interview to show voluntariness.

The case of <u>Florida v. Royer</u>, 460 U.S. 491 (1983), is instructive.  In <u>Royer</u>, two police detectives at the Miami International Airport were observing Royer and thought he fit a "drug courier profile."  As Royer walked over to the airline boarding area, the two detectives approached him, identified themselves as police officers, and asked if Royer had a "moment" to speak with time.  Royer said, "Yes."  <u>Id.</u> at 493-494.  Upon request, Royer produced his airline ticket and his driver's license.  When asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer said a friend had made the reservation in the other name.  Royer was noticeably more nervous during this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics.  <u>Id.</u> at 494.  The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification.  Royer said nothing, but went with them.  <u>Id.</u>

In deciding the case, the Supreme Court noted:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. (Citations omitted). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. <u>United States v. Mendenhall</u>, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. (Citation omitted).

<u>Id.</u> at 497-98 (citations omitted).

Finally, the Ninth Circuit decided this issue in <u>Benitez-Mendez v. Immigration and Naturalization Service</u>, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached and questioned a worker in a field after a number of other workers had fled upon seeing the Border Patrol.  The Ninth Circuit found that no seizure had taken place in regard to the initial questioning of the individual by the Border Patrol.  The Court stated that "[f]rom the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test.  The officer approached the petitioner in an open field and asked him

1    several questions to which he responded voluntarily.  There is no evidence of the use of physical

2    force, a display of a weapon, or the threatening presence of several officers." Id. at 1311.

3        Detaining a person for routine border questioning is not custodial. United States v. Troise,

4    796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731

5    (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge Gonzalez's

6    denial of a defendant's motion to suppress his field statements). In Galindo-Gallegos, patrol agents

7    apprehended the defendant and others running near the Mexican border.  Once they had the 15 or

8    20 people seated, an agent asked them what country they were from and whether they had a legal

9    right to be in the United States. Id.  The defendant said that he was from Mexico and had no such

10   right.  Id.  The border patrol agents did not advise the group of their Miranda rights prior to this

11   questioning.  Id.  After the defendant admitted that he was an alien illegally in the United States,

12   he and the others were handcuffed and put into one of the vehicles.  Id.  The Ninth Circuit affirmed

13   the district court's decision not to suppress the defendant's field statements.  Id.

14       This case is analogous to Royer, Benitez-Mendez, and Galindo-Gallegos.  Here, Agent

15   Baisly was conducting line watch operations along Highway 94.  Agent Matta encountered

16   Defendant along Highway 94, just one mile north of the United States-Mexico border near the

17   Potrero, California, Port of Entry.  Agent Matta observed Defendant tired and lost and later

18   observed his clothing to be dirty with brush marks on them.  Agent Matta conducted a field

19   interview of Defendant as to his citizenship and right to be in the United States.  Defendant

20   responded that he was a citizen of Mexico with no legal right to be in the United States.  See

21   Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior

22   to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held

23   by the court to be legitimate" and admissible).

24       Defendant's field admissions were made during a brief investigatory stop.  See, e.g., United

25   States v. Brignoni-Ponce, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law

26   enforcement may make a brief investigatory stop and ask questions about citizenship and

27   immigration status); United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that

28

persons subjected to brief investigatory detentions are not entitled to <u>Miranda</u> warnings). Defendant answered those questions voluntarily.  The record is devoid of any suggestion that the officers physically restrained Defendant or restricted his liberty in any meaningful way.  Further, the fact that officers were armed or displayed badges does not turn a consensual encounter into a custodial situation.  <u>See United States v. Drayton</u>, 536 U.S. 194, 204-205 (2002).  During this questioning, Defendant was not placed in handcuffs or searched.  There is simply nothing to suggest that Defendant was in custody during his field interview and his statements to officers in the field are admissible at trial.

Here, Agent Matta approached Defendant out in the open along a public highway.  Further, Agent Matta simply stood and spoke with Defendant, thus obviating any physical contact.  Also, Defendant was found walking along Highway 94, the area was "public for the reason that mattered; no alien had reason to fear abuse by an officer and an unscrupulous officer would have been deterred from using illegitimate means by all the witnesses."  <u>Galindo-Gallegos</u>, 244 F.3d at 732.  As in the Supreme Court's holding in <u>Berkemer</u>, there was minimal risk here of the abuses addressed by <u>Miranda</u> because the setting and the presence of others, including motorists using the highway, mitigated against misconduct.  <u>Id.</u>

For all of the foregoing reasons, the Court should deny Defendant's motion to suppress <u>all</u> field statements.

**E.      LEAVE TO FILE FURTHER MOTIONS**

The Government does not oppose this motion, as long as future motions are based upon evidence or information not now available.

| | |
|---|---|
| 1 | ## III |
| 2 | ## <u>CONCLUSION</u> |
| 3 | For the above stated reasons, the Government respectfully requests that Defendant's |
| 4 | motions be denied, and the Court grant the United States' motion. |
| 5 | DATED:        June 11, 2008. |
| 6 | Respectfully Submitted,<br>KAREN P. HEWITT |
| 7 | United States Attorney |
| 8 | |
| 9 | s/Alessandra P. Serano<br>ALESSANDRA P. SERANO |
| 10 | Assistant United States Attorney |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR1453-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| DAVID RIVERA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

     I, ALESSANDRA P. SERANO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     Sara Peloquin, Esq.
     Federal Defenders of San Diego, Inc.


     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on June 11, 2008.

                              s/Alessandra P. Serano
                              ALESSANDRA P. SERANO