# APPENDIX 3

## Judge Moskowitz Order

1
2
3
4
5  **UNITED STATES DISTRICT COURT**
6  **SOUTHERN DISTRICT OF CALIFORNIA**
7

8  UNITED STATES OF AMERICA,  |  CASE NO. 07cr0491 BTM
9  Plaintiff,  |  **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**
10  v.  |
11  MANUEL MARTINEZ-COVARRUBIAS,  |
12  Defendant.  |

13
14  Defendant Manuel Martinez-Covarrubias has filed a Motion to Dismiss the Indictment
15  Due to Erroneous Grand Jury Instruction. For the reasons discussed below, Defendant's
16  motion is **DENIED**.

17  **I. BACKGROUND**
18  On February 28, 2007, a federal grand jury empaneled in this district on January 11,
19  2007 returned a two-count Indictment charging Defendant with Importation of
20  Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of
21  Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).
22

23  **II. CHALLENGED INSTRUCTIONS**
24  A. Video Presentation
25  Prior to the selection of the grand jury jury, the potential grand jurors were shown a
26  video titled "The Federal Grand Jury: The People's Panel." The video's apparent purpose
27  is to educate potential grand jurors about their civic duty to serve, the function of the grand
28  jury, and their responsibilities as grand jurors.

The video presents the story of a woman who serves on a grand jury for the first time. In one scene, after the woman receives the summons, her son tells her what he has learned about the function of a grand jury. Reading from a civics book, the son states that if the "jury finds that probable cause does exist, then it will return a written statement of charges called an indictment . . . ."

When charging the impaneled grand jury, the fictional judge explains that if the grand jury finds that there is probable cause, "you will return an indictment."

Later, the foreperson tells the other grand jurors that there are two purposes of the grand jury: (1) when there is a finding of probable cause, to bring the accused to trial fairly and swiftly; and (2) to protect the innocent against unfounded prosecution.

B. Voir Dire Session

Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns, explained the function of the grand jury to the prospective jurors as follows: "The grand jury is determining really two factors: 'Do we have a reasonable – collectively, do we have a reasonable belief that a crime was committed? And second, do we have a reasonable belief that the person that they propose that we indict committed the crime?' If the answer is 'yes' to both of those, then the case should move forward. If the answer to either of the questions is 'no,' then the grand jury should hesitate and not indict." App. 2 to Gov't Response at 8.

During voir dire, Judge Burns explained to the potential grand jurors that the presentation of the evidence to the grand jury was going to be one-sided. Id. at 14. However, Judge Burns stated, "Now, having told you that, my experience is that the prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the charge, you'll be informed of that. They have a duty to do that." Id. at 14-15.

One prospective juror, a retired clinical social worker, indicated that he did not believe that any drugs should be considered illegal. Id. at 16. He also stated that he had strong feelings about immigration cases and thought the government was spending a lot of time unnecessarily persecuting people. Id. The following exchange occurred:

>  The Court: Now, the question is can you fairly evaluate those cases? Just as the Defendant ultimately is entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment. If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what our Government is doing. I disagree with these laws, so I"m not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.
>
>  Prospective Juror: Well, I think I may fall in that category.
>
>  The Court: In the latter category?
>
>  Prospective Juror: Yes.
>
>  The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?
>
>  Prospective Juror: Yes.
>
>  The Court: I'm going to excuse you, then. I appreciate your honest answers.

Id. at 16-17.

Later, another prospective juror, a real estate agent, expressed a concern regarding the disparity between state and federal law with respect to medical marijuana. Judge Burns responded:

>  Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

Id. at 25.

Subsequently, the prospective juror stated that he felt that drugs should be legal and that rapists and murderers, not people using drugs, should go to jail. Id. at 25-26. The following exchange ensued:

>  The Court: I think rapists and murderers ought to go to jail too. It's not for me as a judge to say what the law is. We elect legislators to do that. We're sort of at the end of the pipe on that. We're charged with enforcing the laws that Congress gives us.
>      I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "Well, I don't like it. So I'm not going to follow it here."
>      You'd have a similar obligation as a grand juror even though you might

have to grit your teeth on some cases. Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it but you'd vote against criminalizing some drugs.

That's not what your prerogative is here. Your prerogative instead is to act like a judge and to say, "All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward.

I can understand if you tell me, "Look, I get all that, but I just can't do it or I wouldn't do it." I don't know what your frame of mind is. You have to tell me about that.

Prospective Juror: I'm not comfortable with it.

The Court: Do you think you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?

Prospective Juror: It would depend upon the case.

The Court: Is there a chance that you would do that?

Prospective Juror: Yes.

The Court: I appreciate your answers. I'll excuse you at this time.

Id. at 26-28.

Later, a potential juror said that he was "soft" on immigration because he had done volunteer work with immigrants in the field, but that he could be fair and objective. Judge Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're not about trying to change people's philosophies and attitudes here. That's not my business. But what I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here." Id. at 61. This juror was not excused.

C. Charge to Impaneled Grand Jury

After the grand jury was impaneled, Judge Burns gave further instructions regarding the responsibilities of the grand jurors.

With respect to the enforcement of federal laws, Judge Burns explained:

But it's not for you to judge the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is [sic] criminal is not up to you. That's a judgment that Congress makes.

And if you disagree with that judgment made by Congress, then your

> option is not to say, 'Well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of [indictment] even though the evidence may be insufficient.' Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.
> Furthermore, when you're deciding whether to indict or not to indict, you shouldn't be concerned with punishment that attaches to the charge. I think I also alluded to this in the conversation with one gentleman. Judges alone determine punishment. We tell trial juries in criminal cases that they're not to be concerned with the matter of punishment either. Your obligation at the end of the day is to make a business-like decision on facts and apply those facts to the law as it's explained and read to you.

App. 1 to Gov't Response at 8-9.

With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." Id. at 20. Later, Judge Burns said, "If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you." Id. at 27.

### III. DISCUSSION

A. Instructions Re: Role of Grand Jury

Defendant contends that statements made in the video, Judge Burns' instructions, and the dismissal of two potential jurors deprived Defendant of the traditional functioning of the Grand Jury. Specifically, Defendant claims that the challenged statements in combination with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising their constitutional discretion to not indict even if probable cause supports the charge." (Def.'s Reply Br. 8.) Looking at the video presentation and the instructions as a whole, the Court disagrees.

Judge Burns made it clear that the jurors were not to refuse to indict in the face of probable cause *on the ground that they disagreed with Congress's decision to criminalize certain activity*. Judge Burns did not err in doing so. In United States v. Navarro-Vargas, 408

F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury instruction that states: "You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you." The majority opinion observed that the instruction was not contrary to any long-standing historical practice surrounding the grand jury and noted that shortly after the adoption of the Bill of Rights, federal judges charged grand juries with a duty to submit to the law and to strictly enforce it. Id. at 1193,1202-03. "We cannot say that the grand jury's power to judge the wisdom of the laws is so firmly established that the district court must either instruct the jury on its power to nullify the laws or remain silent." Id. at 1204.

A prohibition against judging the wisdom of the criminal laws enacted by Congress amounts to the same thing as a prohibition against refusing to indict based on disagreement with the laws. It is true that Judge Burns used stronger language that, viewed in isolation, could be misconstrued as requiring the return of an indictment in *all* cases where probable cause can be found. Particularly troubling is the following statement made to the real estate agent: "Your prerogative instead is to act like a judge and to say, 'All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does.' *And then your obligation*, if you find those things to be true, *would be to vote in favor of the case going forward*." App. 2 to Gov't Response at 26. However, viewed in context, Judge Burns was not mandating the issuance of an indictment in *all* cases where probable cause is found; he was explaining that disagreement with the laws should not be an obstacle to the issuance of an indictment.[1]

Furthermore, the word "obligation" is not materially different than the word "should."

---

[1] The Supreme Court has recognized that a grand jury is not required to indict in every case where probable cause exists. In Vasquez v. Hillery, 474 U.S. 254, 263 (1986), the Supreme Court explained: "The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense - all on the basis of the same facts. Moreover, '[t]he grand jury is not bound to indict in every case where a conviction can be obtained.' United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)."

In Navarro-Vargas II, the majority opinion held that the model instruction that the jurors "should" indict if they find probable cause does not violate the grand jury's independence. The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds probable cause." Navarro-Vargas II, 408 F.3d at 1205 (quoting United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002)). The dissenting opinion notes that the word "should" is used "to express a duty [or] *obligation*." Id. at 1121 (quoting The Oxford American Diction And Language Guide 931 (1999))(emphasis added).[2]

Defendant points to the language in the video where first the son, then the judge, state that if there is a finding of probable cause, the grand jury "will" return an indictment. However, no emphasis is placed on the word "will." As spoken by the actors, the statements are not directives, mandating the return of an indictment upon the finding of probable cause, but, rather, descriptions of what is expected to occur. Similarly, the foreperson's statement that one of the purposes of the grand jury is to bring an accused to trial when there is a finding of probable cause is a general statement of the grand jury's function, not a command to return an indictment in *every* case where probable cause exists.

Defendant also argues that Judge Burns improperly forbade the grand jury from considering the potential punishment for crimes when deciding whether or not to indict. Defendant relies on the following statement:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. *We'd ask you to also abide by that.* We want you to make a business-like decision and look at the facts and make a determination of whether there was a probable cause.

App. 2 to Gov't Response at 25. (Emphasis added.) Although Judge Burns stated that trial jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors. Instead, Judge Burns *requested* that the grand jurors follow the same principle. Similarly,

---

[2] Defendant concedes that at other times Judge Burns instructed that upon a finding of probable cause, the case "should" go forward. App. 2 to Gov't Response at 8, 17; App. 1 to Gov't Response at 4, 23.

7

during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment that attaches to the charge." App. 1 to Gov't Response at 8. (Emphasis added.)

In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth Circuit upheld a jury instruction that stated: "[W]hen deciding whether or not to indict, you *should not* be concerned about punishment in the event of conviction; judges alone determine punishment." (Emphasis added.) Consistent with the reasoning in Marcucci and Navarro-Vargas II, the Ninth Circuit held that the instruction did not place an absolute bar on considering punishment and was therefore constitutional. The instructions given by Judge Burns regarding the consideration of punishment were substantially the same as the instruction in Cortez-Rivera.

Neither Judge Burns nor the video pronounced a general prohibition against jurors exercising their discretion to refuse to return an indictment in the face of probable cause. In any case, "history demonstrates that grand juries do not derive their independence from a judge's instruction. Instead they derive their independence from an unreviewable power to decide whether to indict or not." Navarro-Vargas II, 408 F.3d at 1204.

Both the video and Judge Burns informed the jurors about the utmost secrecy of the grand jury proceedings and their deliberations. The video and Judge Burns also emphasized to the jury that they were independent of the Government and did not have to return an indictment just because the Assistant U.S. Attorney asked them to. In the video, the judge expressed approval at the fact that the grand jury did not return an indictment as to the alleged driver of the get-away car. Judge Burns characterized the jury as "a buffer between our Government's ability to accuse someone of a crime and then putting that person through the burden of standing trial." App. 1 to Gov't Response at 26. Judge Burns also told the jurors that they were not to be a "rubber stamp" and were expected to depend on their independent judgment. Id, at 27.

Even though the jurors were not explicitly instructed that they could use their discretion to refuse to return an indictment, they retained that power by virtue of the secrecy surrounding their deliberations and the unreviewability of their decisions. Nothing that Judge

1  Burns said or did impinged on the jurors' independence in this regard.

2  Defendant counters that the dismissal of the two potential jurors undermined the grand
3  jury's independence from the very start.  According to Defendant, when Judge Burns
4  dismissed the jurors, the message was clear that they were to indict in every case where
5  there was probable cause or they would be excused.  Defendant contends that the remaining
6  grand jurors could not have understood Judge Burns' actions in any other way.  (Reply Br.
7  18.)  The Court disagrees.

8  Upon reading the voir dire transcript, it is apparent that the jurors were excused
9  because they were biased against the government with respect to a whole category of
10 criminal laws, not simply because they were independent-minded and might refuse to return
11 an indictment in a case where probable cause exists.  Judge Burns explained to the clinical
12 social worker, "We're all products of our experience.  We're not going to try to disabuse you
13 of experiences or judgments that you have.  What we ask is that you not allow those to
14 control invariably the outcome of the cases coming in front of you; that you look at the cases
15 fresh, you evaluate the circumstances, listen to the witness testimony, and then make an
16 independent judgment."  App. 2 to Gov't Response at 15.  Judge Burns excused the social
17 worker after he admitted that it would be difficult for him to return an indictment in drug or
18 immigration cases.

19 Similarly, the real estate agent expressed that he thought drugs should be legal and
20 that people using drugs should not be sent to jail.  App. 2 to Gov't Response at 25-26.   The
21 real estate agent said that he was not comfortable with indicting in drug cases.  Although he
22 did not say that he would refuse to indict in all cases involving drugs, he admitted that
23 because of his beliefs, there was a chance that he would refuse to return an indictment in a
24 drug case even though there was probable cause.  Id. at 27.  The real estate agent's
25 responses established that he had serious concerns regarding the criminalization of drugs
26 and could not be impartial with respect to these cases

27 That bias was the reason for the dismissal of the first two potential jurors is confirmed
28 by the dismissal of a third potential juror.  This juror stated that he had a strong bias for the

1  Government.  App. 2 to Gov't Response at 38.  Judge Burns cautioned the juror that he
2  should not "automatically defer to [the Government] or surrender the function and give the
3  indictment decision to the U.S. Attorney.  You have to make that independently." Id. at 40.
4  Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of
5  each case independently based on the evidence presented. Id. at 42-43. Demonstrating his
6  even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would
7  say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.' I
8  wouldn't want you to do that." Id. at 44.

9  A reasonable grand juror would not have interpreted the dismissal of the first two
10 potential jurors as a message that they must indict in all cases where probable cause is
11 found or risk being excused from service.  It was apparent to the other jurors that a lack of
12 impartiality with respect to certain types of cases, *not* independence, was the reason for all
13 three dismissals.

14 In sum, Judge Burns did not err in instructing the grand jurors that they were not to
15 refuse to return an indictment on the ground that they disagreed with the laws.  Furthermore,
16 nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to
17 refuse to indict for any reason whatsoever.  As the Ninth Circuit noted in Navarro-Vargas II,
18 408 F.3d at 1204, the grand jury's independence results from the secrecy of their
19 deliberations and the unreviewability of their decisions.  Nothing in the record shows any
20 impediment to that independence.

21

22 B.    Instructions re: Assistant U.S. Attorneys

23 Defendant also contends that Judge Burns committed structural error by making
24 comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against the
25 charge."  According to Defendant, not only did Judge Burns' comments contradict United
26 States v. Williams, 504 U.S. 36 (1992), but also discouraged independent investigation,
27 leading to inaccurate probable cause determinations.  Defendant reasons that given Judge
28 Burns' comments, the grand jurors would have assumed that if the prosecutor did not present

1　any exculpatory evidence, then none exists, rendering further investigation a waste of time.

2　　　　Under Williams, prosecutors do not have a duty to present substantial exculpatory
3　evidence to the grand jury.  Although Assistant U.S. Attorneys apparently have an
4　employment duty to disclose "substantial evidence that directly negates the guilt" of a subject
5　of investigation (United States Attorneys' Manual § 9-11.233), it does not appear that they
6　have a broad duty to disclose all evidence that may be deemed exculpatory or adverse to
7　the Government's position.

8　　　　Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys
9　to present adverse evidence were inaccurate.  However, Judge Burns' comments do not rise
10　to the level of structural error.  As discussed above, the video and Judge Burns stressed that
11　the grand jury was independent of the Government.  The video and Judge Burns also
12　explained to the jury that they could direct the Assistant U.S. Attorney to subpoena additional
13　documents or witnesses.  App. 1 to Gov't Response at 11, 24.   The jurors were also told
14　about their right to pursue their own investigation, even if the Assistant U.S. Attorney
15　disagrees with the grand jury's decision to pursue the subject.  Id. at 12.

16　　　　In light of the foregoing instructions, the Court does not agree that the grand jurors
17　would assume that if the Government did not present any exculpatory evidence, none exists.
18　A reasonable juror would understand that the Assistant U.S. Attorney may not be aware of
19　certain exculpatory evidence, whether due to legitimate circumstances or inadequate
20　investigation, and that further investigation by the grand jury may be needed to properly
21　evaluate the evidence before them.   Furthermore, Judge Burns told the jury that "in *most*
22　instances" the U.S. Attorneys are duty-bound to present exculpatory evidence.  App. 1 to
23　Gov't Response at 20.  Based on this qualifying language, the grand jurors would have
24　understood that the prosecutor is not always bound to present exculpatory evidence.  Thus,
25　"the structural protections of the grand jury" have not "been so compromised as to render the
26　proceedings fundamentally unfair."  Bank of Nova Scotia v. United States, 487 U.S. 250, 257
27　(1988).

28　　　　If Defendant can establish that the Government in fact knew of exculpatory evidence

that was not presented to the grand jury and that this failure to present exculpatory evidence, in conjunction with Judge Burns' comments, "substantially influenced the grand jury's decision to indict" or raises "grave doubt" that the decision to indict was free from the substantial influence of such events, the Court may dismiss the indictment under its supervisory powers. <u>Bank of Nova Scotia</u>, 487 U.S. at 256. Therefore, the Court will grant Defendant leave to conduct discovery regarding what evidence was presented to the grand jury. If, based upon the discovery, Defendant can establish that he suffered actual prejudice, Defendant may renew his motion to dismiss the indictment.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due to Erroneous Grand Jury Instruction is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED: October 11, 2007

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge